AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT



for the
Western District of Oklahoma

**FILED**

**OCT 15 2018**

CARMELITA REEDER SHIN
CLERK, U.S. DISTRICT COURT
BY: _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF FOUR MOBILE
COMMUNICATION DEVICES DESCRIBED IN
ATTACHMENT A

)
)
)
)
)
)

Case No.   M-18-510-SM

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Electronic and or digital evidence as further described in Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |

The application is based on these facts:

See search warrant affidavit, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

BRIAN HESS, United States Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10-15-18

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

Suzanne Mitchell, United States Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE
SEARCH OF:  (1) A BLACK ZTE
CELLULAR PHONE MODEL
Z899VL WITH SIM CARD, SERIAL
NUMBER 32F477278115, IMEI:
990008867339595; (2) A BLACK LG
CELLULAR PHONE MODEL LG-
M327, SERIAL NUMBER
ZNFL63BL; (3) A BLACK ZTE
CELLULAR PHONE MODEL Z958
WITH SIM CARD AND 8GB SD
CARD, SERIAL NUMBER
325852581681, IMEI:
867420020573475; AND (4) A
SILVER SAMSUNG CELLULAR
PHONE MODEL SM-G530T1 WITH
16 GB SD CARD, SERIAL NUMBER
A3LSMG530T

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

M-18-  510-SM

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian Hess, being duly sworn, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.    I am a Postal Inspector with the United States Postal Inspection Service, and

have been so employed since January 2013.  I am currently assigned to the Fort Worth

Division of the United States Postal Inspection Service domiciled in Oklahoma City,

Western District of Oklahoma.  I am responsible for conducting investigations of crimes

against the United States Mail in violation of federal law(s).  My duties include the

investigation of illegal mailings and the receipt of controlled substances, possession of

which violates Title 21, United States Code, Sections 841(a)(1), 843(b), 844 and 846.

2.     I have received training on the investigation of dangerous and prohibited mailings, namely, controlled-substance investigations, as part of my employment with the United States Postal Inspection Service.  In addition, I have participated in multiple narcotics interdiction operations related to the United States Mail in multiple jurisdictions.  Prior to working for the United States Postal Inspection Service, I was employed as an agent with the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control from August 2007 to January 2013.  While employed as an agent with the Oklahoma Bureau of Narcotics, I participated in over three hundred (300) controlled-substance investigations including those for methamphetamine, marijuana, cocaine hydrochloride, cocaine base, heroin, ecstasy, and prescription narcotics.  Those investigations related to the possession for sale, possession for personal use, distribution, transportation, manufacturing or cultivation of controlled substances.  Furthermore, over the course of my law enforcement career, I have received over 1,000 hours of additional law enforcement continuing education instruction provided by the United States Postal Inspection Service, the Drug Enforcement Administration, the Bureau of Alcohol Tobacco and Firearms, the Oklahoma Bureau of Narcotics and Dangerous Drugs; and other state and local law enforcement agencies.  I have assisted other United States Postal Inspectors and acted as the Affiant for the application and execution of federal search warrants to open and seize contraband, fruits, instrumentalities and evidence of crimes that were sent via the United States Mail.

3.     This Affidavit is based upon the Affiant's personal investigation and or upon

information received from other law enforcement officers and agents and may not be

inclusive of all evidence or information available, or of all facts known to me relative to

this investigation.  Since this affidavit is being submitted for the purpose of obtaining a

search warrant, I have not included each and every fact known to me concerning this

investigation. More specifically, I have set forth only facts that I believe are necessary to

establish the required foundation for a judicial order authorizing the search warrant.

### IDENTIFICATION OF DEVICES TO BE EXAMINED

4.     I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search (collectively, "the target devices"):

A.     a black ZTE cellular phone model Z899VL, serial number

32F477278115, IMEI: 990008867339595; with SIM card;

B.     a black LG cellular phone model LG-M327, serial number ZNFL63BL,

IMEI illegible;

C.     a black ZTE cellular phone model Z958, serial number 325852581681,

IMEI: 867420020573475; with SIM card and 8GB SD card; and

D.     a silver Samsung cellular phone model SM-G530T1, serial number

A3LSMG530T, IMEI unable to be determined; with 16 GB SD card.

5.     The target devices are currently in the lawful possession of the United States

Postal Inspection Service and are located at the United States Postal Inspection Service

Oklahoma City Domicile in the Western District of Oklahoma.

3

6.   The warrant I request herein would, if granted by this Court, authorize the forensic examination of the target devices described in Attachment A for the purpose of identifying electronically-stored data particularly described in Attachment B.

## BACKGROUND INFORMATION PERTAINING TO DRUG TRAFFICKING ACTIVITY

7.   Based upon my training, experience, and participation in other narcotics investigations and my extensive discussions with experienced agents, I know that people who deal in illegal controlled substances share various combinations of common characteristics, some of which are listed as follows:

A.   Significant narcotics traffickers and distributors of controlled substances frequently maintain on hand large amounts of U.S. currency in order to maintain and finance their narcotics business.

B.   Narcotics traffickers routinely use cellular telephones as a mode of communication in furtherance of their criminal activities.  As a result, cellular telephones used by these organizational members will likely contain call lists, stored telephone directories, voice and text messages, digital photographs, video clips, and other electronic evidence, which will constitute evidence of their drug trafficking activities.

C.   Narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances; furthermore, I know that the aforementioned books, records, receipts, notes, ledgers, etc. are generally

maintained where the traffickers have easy and ready access to them, including in their residences, businesses, and automobiles.

D.   It is common for significant dealers to secrete contraband in secure locations within their residences, businesses, and automobiles for ready access and to conceal the same from law enforcement authorities.

E.   Persons involved in significant drug trafficking conceal in their residences, businesses, and automobiles, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from narcotic trafficking activities.

F.   When drug traffickers amass proceeds from the sale of drugs, the drug traffickers often attempt to legitimize these profits, or otherwise conceal them from discovery by law enforcement officers.  To accomplish these goals, drug traffickers often use different techniques, including, but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, the purchase of real estate, as well as shell corporations and business fronts to conceal the true ownership and illegal source of the proceeds.

G.   Narcotics traffickers commonly maintain books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization.

H.    Narcotics traffickers take, or cause to be taken, photographs of them, their associates, their property, and their product.  These traffickers usually maintain these photographs in their possession.

I.    Narcotics traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing narcotics; and these paraphernalia include, but are not limited to, scales, plastic bags, cutting agents, and other devices used for packaging, to aid in the concealment of the drug for its distribution.

J.    The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including trafficking in controlled substances.

K.    Dealers in narcotics often keep firearms, ammunition, and other weapons in their residences, businesses, and automobiles to safeguard supplies of drugs and the fruits of narcotics dealings.

L.    Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement officers and, in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names and that they maintain such documents of evidence of their false identities in their residences, businesses, and automobiles together with evidence of their true identities.

M.    Drug traffickers commonly conceal their activities from members of the public by transacting their business in a covert manner frequently conducting their business during the nighttime hours when darkness helps conceal their activities;

6

N.   Major drug traffickers commonly conduct a significant amount of their business by using cellular telephones and normally make frequent calls to direct, supervise, and coordinate their activities.

O.   Individuals primarily engaged in drug trafficking activities are not known to associate in their businesses or social activities with others not engaged in the same drug trafficking activities.

P.   Drug traffickers maintain records using the assistance of computers and other electronic data storage/processing devices. These computers commonly include computer hardware, computer software, computer related documentation, and computer data security devices.  Moreover, based upon your Affiant's knowledge, training, and experience, your Affiant knows that searching and seizing information from computers and other electronic data storage/processing devices often requires agents to seize most or all electronic storage devices (along with related peripherals), which commonly includes handheld computers, electronic organizers, compact discs, digital video discs, smart media cards, jump drives, zip discs and floppy discs, to be searched later by a qualified computer expert in a laboratory or other controlled environment.  This is true because the great volume of information which can be stored on computers can take weeks and evens months to sort, and it would be impractical to attempt this type of data search on site. Moreover, searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.

Q.    Further, I know that drug traffickers often maintain many of the

aforementioned items for long periods of time.  For example, drug traffickers will

often maintain records associated with their narcotics trafficking for several months,

or even years, because they need these records to efficiently operate and organize

their drug trafficking operation.

### PROBABLE CAUSE

8.    On August 23, 2018, I responded to the Sooner Station Post Office located in

Norman, Oklahoma, and conducted a review of the Priority Mail Express parcels which

had arrived for delivery.  I located Priority Mail Express parcel EI 715512685 US, which

displayed indicators consistent with the shipment of controlled substances.  The parcel

was addressed to Anthony Maxwell, at 227 Monticello Road, Norman, Oklahoma 73072.

9.    On August 23, 2018, I along with members of the Norman Police Department

(NPD) conducted an investigation regarding the parcel.  Investigators arrived to and

made contact with the occupants of 227 Monticello Road, Norman, Oklahoma 73072.

The occupants were identified as Jamie Ondrejovich and Timothy Perez.  Ondrejovich

indicated the parcel was destined to a friend of hers who did not live at the residence.

Ondrejovich explained her friend occasionally received mail at her residence.

Ondrejovich indicated her friend was a female and was not Anthony Maxwell (listed

recipient of the suspect parcel).  Ondrejovich explained that once the parcel was

delivered, she had agreed to take custody of it and bring it to her friend in Oklahoma

City.  Ondrejovich stated she was contacted yesterday on her cellular phone by her friend

who advised a parcel was destined to her residence.  Ondrejovich later identified her

friend as La Shawna McFarland (the correct spelling and pronunciation was later

obtained).

10.   Ondrejovich gave consent to allow investigators to open the parcel and

examine the contents.  The parcel was found to contain several bundles each of which

contained a substance consistent with methamphetamine.  NPD Detectives conducted a

presumptive methamphetamine field test on a portion of the substance; the test displayed

a positive result.  Detective D. Cook advised the bundles had a combined approximate

weight of 2,362 grams (weighed in their packaging).  A portion of the controlled

substances were removed and retained as evidence by NPD Detectives while the

remaining controlled substances were re-sealed back inside the parcel in anticipation of

conducting the controlled delivery of it to its intended recipients.

11.   I asked for and received consent to conduct a search of Ondrejovich's cellular

phone.  Ondrejovich displayed the contact information for McFarland (405-837-9741 and

405-492-0356).  While speaking with Ondrejovich, I observed McFarland was calling

Ondrejovich's phone numerous times.  Ondrejovich agreed to cooperate with

investigators in an attempt to have the parcel delivered to McFarland.  Ondrejovich

displayed several text messages sent by McFarland directing Ondrejovich to "Get up."

At investigator's request, Ondrejovich sent McFarland a text message advising she had

just woke up and the box was not there yet.  McFarland called Ondrejovich to speak with

her concerning the parcel.  Ondrejovich answered the call by placing it on speakerphone

in the presence of investigators. McFarland instructed her to make sure she was awake

and that the parcel was in Norman. McFarland said it was important she was awake and

alluded that Ondrejovich must not be wanting to get paid. Ondrejovich advised

McFarland she would call her when the parcel arrived.

12.  At approximately 12:00 p.m., at investigator's request, Ondrejovich sent

McFarland a text message indicating the parcel had arrived but was going to be left on

her front porch. NPD Detectives observed a follow up call from McFarland to

Ondrejovich where McFarland expressed her frustration that the parcel was left outside

on the porch. During the call, McFarland advised she was headed to Ondrejovich's

residence to pick up the parcel immediately.

13.  At approximately 12:50 p.m., a white truck arrived to the residence. A white

male was observed exiting the vehicle, retrieving the parcel from the porch, and then

placing it inside the vehicle. The white truck then departed the residence. Surveillance

team members identified the vehicle as a white Dodge pickup bearing Oklahoma license

plate DED-738. Investigators covertly followed the vehicle as it left the residence.

14.  Norman Police Detective/K9 Handler J. Sumner conducted a traffic stop on the

white Dodge truck. Detective Sumner was operating a NPD Interdiction Unit. The

traffic stop occurred on I-35 northbound between Tecumseh Road and Indian Hills Road

(Cleveland County; Western District of Oklahoma). Detective Sumner's report indicated

the following information:

   R. While being observed by Sumner, the vehicle conducted multiple traffic

violations including changing lanes to the middle lane without signaling and changing lanes from the middle lane to the outside lane without signaling 100' prior to the lane change.

S.    The driver was identified as Kyle Wolfe and the passenger as La Shawna McFarland.  Both subjects provided Oklahoma I.D cards.  Wolfe advised that his license was suspended.  McFarland also advised that her license was revoked.

T.    Sumner deployed his certified drug detection K9 partner, Dredo, to conduct a scan around the exterior of the vehicle.  Sumner advised his K9 gave a positive alert to the vehicle.

U.    During the search of the vehicle Sumner located a sealed box on the drivers' side rear seat (suspect parcel).  The box contained a second box that contained a vacuumed sealed package of methamphetamine.  Sumner also located a glass pipe with meth residue in the center console.  Sumner located a clear baggie that contained marijuana residue in the center console.

V.    Sumner read Wolfe his rights per Miranda.  Wolfe advised that he traveled to Norman with McFarland to see a friend.  Wolfe advised that the friend was not home so McFarland picked up a package from the porch of the residence. Wolfe went on to say that he did not exit the vehicle and only touched the package after it was placed in the vehicle by McFarland.

W.    Sumner read McFarland her rights per Miranda. McFarland advised that Wolfe retrieved the package from the porch of the residence.  McFarland advised

that she is paid $300 to pick up packages and has done it two times before. McFarland said that they came to Norman to pick up the box. McFarland did not want to advise who they take the package too. McFarland advised that it contained methamphetamine but did not know how much. McFarland stated that the subjects they are picking the package up for, deal methamphetamine. McFarland advised that she had methamphetamine secreted inside her body which was later retrieved at the jail.

15.   Norman Police Detectives advised four cellular phones were located inside the vehicle during the traffic stop. The phones were identified as a silver Samsung cellular phone model number SM-G530T1, a black ZTE cellular phone model number Z958, a black LG cellular phone model number LG-M327, and a black ZTE cellular phone model Z899VL (the target devices). The target devices were seized and stored as evidence by the NPD. I later obtained all four cellular phones from NPD custody and have maintained them at the United States Postal Inspection Service Oklahoma City Domicile.

16.   The target devices are currently in the lawful possession of the United States Postal Inspection Service. The target devices came into the United States Postal Inspection Service's possession as described in paragraph 14, above. Therefore, while the United States Postal Inspection Service might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

17.   In my training and experience, I know that the target devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the United States Postal Inspection Service.

## **TECHNICAL TERMS**

18.   Based on my training and experience, I use the following technical terms to convey the following meanings:

A.   Wireless telephone.  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the

device.

B.    Digital camera.  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

C.    Portable media player.  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

D.    GPS.  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.

Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

E. PDA. A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and

presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

F.    IP Address.  An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

G.    Internet. The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I know that:

A.    a ZTE cellular phone model Z899VL has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation

device, and PDA[1];

B.    an LG cellular phone model LG-M327 has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA[2];

C.    a ZTE cellular phone model Z958 has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA[3]; and

20.    a Samsung cellular phone model SM-G530T1 has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA[4].

21.    In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used a particular device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensic tools.  Examining data stored on

---

[1] See https://www.zteusa.com/majesty-proplus.

[2] See https://www.lg.com/us/cell-phones/lg-M327-cricket-x-charge.

[3] See https://www.zteusa.com/zte-zmax-2-att.

[4] See https://www.samsung.com/us/support/owners/product/galaxy-grand-prime-metro-pcs.

devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23.   *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

A.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

B.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

C.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

D.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a

review team and passed along to investigators.  Whether data stored on a computer

is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves.  Therefore, contextual

information necessary to understand other evidence also falls within the scope of the

warrant.

    E.    Further, in finding evidence of how a device was used, the purpose of its

use, who used it, and when, sometimes it is necessary to establish that a particular

thing is not present on a storage medium.

24.  *Nature of examination.*  Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the device

consistent with the warrant.  The examination may require authorities to employ

techniques, including but not limited to computer-assisted scans of the entire medium,

that might expose many parts of the device to human inspection in order to determine

whether it is evidence described by the warrant.

25.  *Manner of execution.*  Because this warrant seeks only permission to examine a

device already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises.  Consequently, I submit there is

reasonable cause for the Court to authorize execution of the warrant at any time in the

day or night.

## CONCLUSION

26.  I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

_____
Brian Hess
United States Postal Inspector
United States Postal Inspection Service

SUBSCRIBED TO AND SWORN BEFORE ME at Oklahoma City, Oklahoma, on

this __15th__ day of October, 2018.

_____
Suzanne Mitchell
United States Magistrate Judge
Western District of Oklahoma

**ATTACHMENT A**
**Property to be Searched**

1.      The devices to be searched are:

A.      a black ZTE cellular phone model Z899VL, serial number

32F477278115, IMEI: 990008867339595; with SIM card;

B.      a black LG cellular phone model LG-M327, serial number ZNFL63BL,

IMEI illegible;

C.      a black ZTE cellular phone model Z958, serial number 325852581681,

IMEI: 867420020573475; with SIM card and 8GB SD card; and

D.      a silver Samsung cellular phone model SM-G530T1, serial number

A3LSMG530T, IMEI unable to be determined; with 16 GB SD card.

2.      The target devices are currently in the lawful possession of the United States

Postal Inspection Service at the United States Postal Inspection Service Oklahoma City

Domicile.

**ATTACHMENT B**
**Items to be Seized**

1.    All records on the Device described in Attachment A that relate to violations of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), 844 and 846, including, but not limited to:

A.    Contacts, address books and calendars, customer lists and related identifying information such as names, nicknames and/or monikers within the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

B.    Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

C.    All internet usage history that may reveal evidence of drug distribution, such as package tracking, internet mail communications, electronic payment receipts, etc.

D.    Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

E.    all logs/histories depicting incoming/outgoing numbers dialed to and from the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

F.    Internet/World Wide Web (WWW) browser files including browser history, browser cache, browser favorites, auto-complete form history and stored passwords;

G.   USPS parcel data including parcel label information which contains names, addresses, tracking numbers, and dates whether documented by type or digital image;

H.   Photographs, audio/video recordings with their associated metadata relating to and which provide evidence of the above described criminal activity and further described in this affidavit;

I.   Stored communications which are voice recordings/messages, text messages (SMS) and multimedia messages (MMS), emails and attachments, read or unread which relate to and provide evidence of criminal activity described in this affidavit regarding controlled substance offenses;

J.   Stored location information including global positioning system (GPS) data indicating coordinates, way points, tracks and locations in which the phone has traveled; and

2.   Evidence of user attribution showing who used or owned each of the target devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.